She's been at it a long time. Some of us longer than others, Bill. Mr. Brunner. May it please the court, Robert Brunner representing Ms. Rodgers. Your Honor, your honors, the district court below committed error in two ways when it granted summary judgment in this case. First of all, based its order on an erroneous view of the plaintiff's claims and the facts. It did seem to me that the district court had the facts mixed up a little bit, but I'm not sure whether it makes a difference. Our review of the summary judgment is de novo. And my concern about this case is that the product that is allegedly defectively designed here was not being used. Yes, your honor. That's the plaintiff's theory of the case, is that the product itself was not. I'm used to the fact that the defective design cases I learned about in law school and had experience with afterward are products that were being used for their intended purpose, but had some kind of defect in their design that caused an injury. Here, your case is about a product that wasn't used at all. Your Honor, I believe there are two responses to that. Number one, we would dispute that it's not being used. I would readily acknowledge and do readily acknowledge it is not being physically handled at the moment Mr. Rodgers makes an inappropriate connection and is killed. He may well have intended to use it in a moment, but he didn't, right? That is correct. The design of the product not only allowed, but encouraged that is our claim. Counsel, let me, because I'm kind of where Judge Pryor is coming from. In regards to the facts, after the accident, the extension of the tube was found connected to one of the cylinders on the left side of the airplane, correct? That is correct, your Honor. The airline was found on the floor next to the airplane, is that correct? That's what the facts were saying. Then the tester was found on top of the engine, not attached to the tube or to the air hose. Now, those are the facts I gleaned from this case. My problem is, does that show any error? I mean, exactly where Judge Pryor is. How's it being used? I mean, it's just laying there. The first part of that, your Honor, is this test is a process. Well, is there any error in those facts as to where these pieces were found? The error, or my disagreement with your question, is that it's not being used. As we acknowledge, it's not being handled, but we believe this test... Well, it's not being hooked up the way it was supposed to be, right? Because of this design, that's right, your Honor. The decedent hooked up the wrong thing? Yes, your Honor. And that's what caused the injury, right? That is the error that was foreseeable and that should have been designed out. We have Mr. Likens, the defendant's expert, describing that this process, and as he teaches it, it is a process. It is all these steps. The defendants provide instructions for all of these steps, for this sequence. But going back to your expert, on that basis, you've got to assume some facts that we don't know. I mean, that's exactly what the district court did here. They're saying, well, you've got the expert testimony, but what are the facts that enables them to testify to that other than the product was hooked up wrong? But there's no facts that show that. There are facts that show that, your Honor. Now, there may be circumstantial evidence. You can see that. This is a lot like the Seaman case, this court's case of 2016, where the man died in the deer stand and nobody was there to witness it. But what we have here is, by all accounts, by two eyewitnesses who we acknowledge were not staring, recording in their minds exactly what the guy's doing, but they had told him, or he had told them he was doing these tests. He had done the tests on two cylinders, and he was moving over to the other side. And the only, and this is in the expert testimony, this is the... Well, I would submit not only an inference that goes our way on summary judgment, but the only reasonable inference of what is going on. And while, again, conceding that he's not handling the tester at the time, it is the design of the tester and the fact that it controls, it absolutely controls and mandates what these other two parts of the process, the compressor hose and the extender, are going to be. And in that respect, we use the term use, and I don't mean to be playing the semantic game. It's not. It's very important. But the word use does not appear as an element of an ADMLD case, of an Alabama product liability case. What you have in those cases, and it's throughout the cases that we have cited for this court, as well as the cases that the defendant has cited for this court, is that the defective design, the negligent design, the wanton design, has to be a cause of the injury. Can you point me to any decision under the Alabama Extended Manufacturer's Liability Doctrine where the Supreme Court of Alabama has ever affirmed a verdict for a plaintiff where the product that is the subject of the complaint as having been defectively designed wasn't actually being used at the time? I think there are cases, Your Honor. Can you name me one that satisfies that test? I believe, for example, the Bell case that cited in the briefs with the power pole that falls down because it's defective. I don't know that anybody's using or handling the power pole. But it's the power pole itself that causes the injury, right? It is, and we submit that it is the design of the tester. The tester did not fall down and hit anybody. The tester didn't do anything, right? The tester did not physically act in this scenario. And had the tester been hooked up to be used for its intended purpose, this accident would not have occurred. Had it been hooked up correctly, this accident would not have occurred. Isn't that right? That is correct, Your Honor. And we submit that if it's designed properly, then this foreseeable human error cannot happen. It seems to me that if hooking it up and using it for its intended purpose wouldn't have caused the injury, then that would suggest that it is designed properly. I submit or disagree, Your Honor. And I would also submit that there is not a case under Alabama law holding an opposite that addresses the facts like we have here. I'll see you in time. Judge Martin has a question. I don't know whether your colleague is going to talk about the expert reports because they certainly stated a theory of liability. And I can't tell whether the district court considered them or not. Judge, what happened procedurally is we had a summary judgment filed in March. Yeah, I kind of know. She said your opposition filed the Daubert motion challenging your experts. She said you're out of time, indicating that she was going to consider them. And then in the summary judgment order, it didn't seem as though she had. That's exactly correct, Your Honor. They filed them out of time. She said because they would be dispositive if ruled on, she's not going to consider them, the court said. That order was issued the day after they filed those motions to preclude. So we never got a chance to respond to that. And then you can see in the oral argument that the issue never came up. So nowhere in summary judgment were the 702 factors addressed. We did not have a chance to deal with that. And our experts, when the order comes out, it's dealt with in a footnote. Okay. Any other questions? Mr. Bruner? So, Mr. DeMarco? Yes, Your Honor. May it please the court, my name is Paul DeMarco. Along with my partner, John Berquist, we represent AWB Industries, which does business as aircraft tool supplies. On behalf of AWB, we would ask the court to affirm the lower court's granting of the motion for summary judgment, which the court entered on the basis that there was no evidence that supported that there were proximate calls from the differential pressure tester caused the plaintiff's injuries. I'm going to address the court's order regarding proximate calls. In addition, the court could also affirm this motion for summary judgment on other grounds that were asserted that are part of the record that has been submitted to this court. Mr. Berquist, with time permitting, would address the product misuse and this alternative design. Mr. Rogers was a Federal Aviation Instruction certified mechanic. He had been a mechanic for over 10 years. He was also an experienced pilot. According to his father, he had done over 3,000 of these tests and was familiar with the tests and the safety of these tests. AWB Industries is a small business located in Michigan that makes these tools for aviation mechanics and has done so for over 40 years. The undisputed evidence in this case, as the court asked, was that this differential pressure tester was sitting on top of the engine. It is undisputed that it had not been hooked into the device at the time. It was sitting on the engine. The differential pressure tester did not make the propeller move and strike Mr. Rogers. The differential pressure tester did not make Mr. Rogers have his head in the arc of the propeller. And there was nothing in the use of the tester sitting on top of the engine that would require him to have had his head in the arc of the propeller. In addition, in the use of the differential pressure tester, the fact that the propeller moved and it moved backwards was that he did not use the differential pressure tester. It was sitting on top of the engine. And the plaintiff has conceded to the court that if there was no proximate cause, that all of his claims would be dismissed. The plaintiff's counsel, the appellant's counsel, also noted that after an exhaustive search, he could not find any controlling precedent supporting the argument that proximate cause can be based on the unintentional substitution of another product. The order dismissed all the claims under the claims alleged by the appellant of the Alabama Extended Manufacturer's Liability Doctrine, negligence and wantonness, and breach of warranty. And all of those claims require proximate cause be proved in those cases. And the many cases out there, the Alabama Supreme Court has said that open and obviousness are an integral part of the inquiry into proximate causation. So in addition to the fact that this tool was sitting on the engine not being used, there are a litany of cases that talk about the propellers and boat motors and rotating blades of lawnmowers that they're open and obvious. And those prevent prevailing on any of those claims. So first of all, you cannot prevail on proximate cause because you do not have the tester being used. And then finally, because of the— That's the easiest way to decide this case, isn't it? Just to stop right there. Isn't that right? Everything else is a lot more complicated. The burden of truth is on the appellant when it comes to proximate cause. And in this case, the court made it clear that speculation is no substitution for evidence. And as for your court's interest about the expert witnesses, the judge did take that into consideration in her order. In the footnote, I mean, she used the word speculative. That's all. I mean, she didn't go through the rules of evidence, the factors, considering the Daubert motion, did she? No. I think what she did, Your Honor, was in reading the order, she did mention that because the expert witnesses were basing their opinions on facts that were speculative, then she did not need to consider those opinions under the Federal Rules of Civil Procedure, Rule 702. So she did take into consideration the expert's opinion. It's pretty thin. Have you ever seen an analysis of an expert that was that thin? I would not dare question a judge's order or how a judge writes their order. Oh, I bet you've questioned one of mine. I mean, this is what she says. Plaintiff has provided expert opinions to support her AEMLD claim. However, those experts' opinions cannot establish proximate cause here because they're based on speculation, period. Citation to Rule 702 allows expert opinions if they're based on facts or data. Yes, Your Honor, and I believe from reading the order, what the judge did was took the rest of her order where she talked about the proximate cause and that the questions were speculative, it was conjecture, and thus used that footnote, Your Right Honor, to say, because of what I have put in the body of the order that this is speculative and conjecture, that that's why I do not need to, or I do take… Maybe I don't understand this case, but it seemed to me that what we should do here is, if we assume everything that the plaintiff is saying is true about how this accident occurred, we have to decide with or without regard to the admissibility of the expert. We'll stipulate it's admissible. Everything is as the plaintiff says. The question is, is that enough to establish proximate cause? And your answer was that because the tester was not being used, it did not proximately cause the injury. That's correct, Your Honor. That's what I had at my point too. If that's really the end of the case, I never understand when lawyers who are representing the same client split up argument. That is actually my argument at that point, Your Honor. Okay. All right. Do you have any questions? If there are no questions from the court, then I will see no further need to present further argument on points in the brief. Okay. All right.  Mr. Carado, you've got seven minutes. Yes, Your Honor. All right. Your Honor, there is simply no case law that goes the other direction on this that can support that. I understand. It's really just a matter of logic, isn't it? I mean, I don't know how you can say that the tester caused an injury when the tester wasn't being used. Your Honor, that's what our proof shows. It's that the design of this tester, you remember, okay? This is a completely new theory of defective design. Would you agree? You can't find a case that says that a product that's not being used because of the way it was designed led to a mistake on the part of a plaintiff where the plaintiff ended up using another product mistakenly, and the use of that product is what caused the injury. That leads to a claim for defective design against the product not being used. Your Honor, there is not a case saying that specifically. I readily acknowledge. There is also not a case based on these facts saying there cannot be a claim. The problem with it is that it goes against the entire theory of defective design. The whole notion of a defective design is the manufacturer manufactured a product for an intended purpose that had a design defect that, when used as intended, nevertheless caused injury because of that design defect. But that's the entire theory of defective design, isn't it? It is, Your Honor, and this is consistent with that. Remember, we have part of the product is the instructions. The process that's being done is everything in those instructions, and that process goes on whether it's another manufacturer's product being connected or this defendant's own product being connected, which they make, in effect, the same thing. What it gets back to is it is the design that causes this defect. It is the design of ATS's device. You're skipping over the point that I was making, which is the whole theory of defective design is that when you use the product for its intended purpose, it causes injury because of a design defect. This product wasn't being used for its intended purpose. Your Honor, I'm afraid we're just going to have to disagree because I... You agree it wasn't hooked up to the engine, right? It wasn't hooked up the way it was supposed to be hooked up. The tester wasn't. It was not being physically handled at the time. It was always... It wasn't being connected and used the way it's supposed to be, right? At all. Because of its design, is our guess. How do we know, then, that the facts are batted up, but how do we know, then, that we're defining whatever the mechanic must have thought in regard to that? You're saying it was defective and it wasn't used the way it was. We don't know that. What proof do you have that he did know that? What we have, Your Honor, is proof from the eyewitnesses as to what he is doing, as to what he's telling them he's doing. We have the policies, procedures, and practices whereby these tools are used and this test is done. But you don't have anything that's defective hooked up. We have. How do you know that that's what he... You're saying that's what he intended to do, and if he had done it, then that would have caused his death, right? Because of defective design. If the defendant's device had been designed properly, pursuant to our alternative... Then you still wouldn't know because it wasn't hooked up. We absolutely wouldn't know, Your Honor, because this would be impossible because you could not use the extender with the compressor hose. You have no proof that shows that that's what was done on the left-hand side of the engine to begin with? I do, Your Honor. I do have that proof. We have the circumstantial evidence, the expert testimony, which again was pre-permitted from consideration at all based on a footnote. That is the real judge, the only reasonable inference. If you look at the transcript of the summary judgment argument, you'll see that defendants actually conceded. Their defendant actually conceded that was a reasonable inference during that hearing. There really isn't any other explanation as to what could have happened. There's no other reason for the propeller to move. The spark plugs were out, meaning there was no mechanical reason that it was going to move. There was no other force, nothing else just physically, that could have moved the propeller other than that air going into it. There was no air going into it, counsel. There's no air hooked up. It's laying on the ground. I ask you that question where these are the three things that they're showing. There's no air hooked up, right? What happens, Judge, is this is a, and I wish we could have the products, but it's a pneumatic hose with a check valve on it. When that mechanic goes to actuate that check valve and puts it on the extender, he's letting that unregulated 90 PSI, 100 PSI air into the engine, which he should not be able to do if the tester was designed correctly, but it doesn't go in long enough to close the check valve. It comes around and it kills him. Well, I understand what you just said, but that's not what happened in this case. Judge, I respectfully disagree. I believe that is the only evidence of what happened in this case. Anything else is pure speculation? Where is the hose, the air hose? The hose at the time John Rogers is hit is in his hand being inserted into the extender that comes out of the engine. That's the air hose? That is the air hose. Okay. Then where was the tester? The tester is sitting on the engine because he's mistaken the hose, the air hose, which is the same. This goes to the whole heart of it. The air hose is the same as the air hose coming out of the extender. He picks the wrong one and that is just God's business. It's the only explanation for what happens. The district court found that, didn't she? She said it's undisputed that if the extender or the air compressor hose had been manufactured so that they were not compatible with each other, the accident could not have happened. I see I've exceeded my time. Can I? You may. She did find that and that really proves the point of our current design. What the district court erred on is what we were claiming. Our claim has always been there are two hoses that are substantially identical from a human factors perspective, from a guy working in a repetitive task perspective. They're the same. Any drugs are all the same. What the district court found and based its whole ruling on, starting on page 11 and all the way to speculation, is that he mixed up the tester with the extender, which was never our case. Okay. Okay, Mr. Brunner, we have your case and take it under submission and move on to the next one.